FILED
2006 Sep-29 PM 04:09
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **SARA CLOPTON, DANNY JOE TIDWELL, and S. T. STINSON, on behalf of themselves and other similarly situated** | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action Numbers **2:03-cv-3369-UWC** **2:03-cv-3371-UWC** |
| vs. | ) ) | **2:03-cv-3374-UWC** |
| **MONSANTO COMPANY, PHARMACIA COMPANY, and PFIZER, INC.,** | ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION ON
MOTION FOR PARTIAL SUMMARY JUDGMENT
BASED UPON THE STATUTE OF LIMITATIONS**

The Defendants have moved for partial summary judgment, on the ground that the state law claims in these actions were untimely filed. (Doc. 510.) For the reason which follows, the Court concludes that the motion must be denied.

I. The Applicable Facts

For several decades, the Monsanto Plant in Anniston, Alabama, manufactured

polychlorinated biphenyls ("PCBs") for use as insulation in electric transformers and other commercial purposes. During the years in which the Monsanto Plant operated, the PCBs it manufactured allegedly polluted the adjacent property and waterways.

The Monsanto Plant closed in the mid-seventies.

A few months following the nationally-publicized 2003 court-approved settlement in the lead case, *Tolbert v. Monsanto* ("*Tolbert*") (2:01-cv-1407-UWC), Plaintiffs Sarah Clopton, Danny Joe Tidwell, and S.T. Stinson filed this putative class action against the Defendants on November 14, 2003.[1] In their complaint, Plaintiffs assert a CERCLA cost recovery claim, as well as Alabama state law claims for negligence, wantonness, breach of duty to warn, fraud, outrage, trespass, and nuisance.

It is undisputed that between January 1, 1993 and November 14, 1997, at least 211 articles were published relating to the topics of Monsanto, PCBS, or contamination in the area in and around Anniston, Alabama. Additionally, numerous television reports were aired relating to the same topics.

On February 17, 2000, the Agency for Toxic Substances and Disease Registry

---

[1] The lawsuit was originally styled *Cole v. Monsanto,* with twelve named plaintiffs. However, this Court denied the motion for class certification and severed the action into separate lawsuits. Presently, only three of the named plaintiffs have outstanding claims: Clopton, Tidwell, and Stinson. The Court will refer to these three lawsuits in the singular, unless otherwise necessary.

("ATSDR") released a Health Consultation for public comment which, for the first time, raised concerns that the "PCB contamination in Anniston might be more widespread than was previously believed." (Pls.' Ex. H.) In bold font the preliminary report[2] reaches, *inter alia*, the following conclusions:

> Exposure to PCBs in soil in parts of Anniston present a public health hazard.  PCBs in residential soil present a public health hazard of cancerous and non-cancerous health effects for persons with prolonged exposure.

(Pls.' Ex. H at p. 1) (emphasis added).

Two days after release of the ATSDR report, the first line of the *Anniston Star*'s February 17 edition reported: "A federal government report has found sufficient levels of PCBs in soil in parts of Anniston to present a public health hazard." (Defs.' Ex. F at Doc. 202.) (emphasis added).  The article also explains that PCBs can become airborne.  (*Id.*)  The second page of the article leads with the following headline: "Report: Sufficient levels of PCBs found to present a public health hazard." (*Id.*) (emphasis added).  The article goes on to report that the ATSDR was planning a meeting to discuss the report and listed the address for nine locations where a copy of the report could be obtained.  (*Id.*)

However, the study was equivocal:

---

[2] The final ATSDR study was not released until July 2003.  (Pls.' Ex. J.)

> [t]here is an inadequate description of sampling and analytical methods for some of the data. This lack of information has caused us to make estimates of PCB exposure that may overestimate or underestimate health risk. For this reason, our estimates of exposure magnitude and our public health conclusions might change.[3]

(Pls.' Ex. H at p. 4.)  In fact, in an editorial on February 18, the *Anniston Star* cautioned the community against becoming "unglued" over the study. (Defs.' Ex. B at Doc. 203.)

But eight days after the publication of the study, on February 25, 2000, *Balkom v. Monsanto* was filed by Diann Balkom, Elaine Smith, and Lela McClendon as a putative class action in the Circuit Court of Calhoun County, Alabama.[4] The causes of action in *Balkom* are substantially similar to those in the instant cases. It was not until June 23, 2004, that *Balkom* was settled by the individual plaintiffs and dismissed by the state court.

On May 3, 2001, a little over one year after *Balkom* was filed, *Tolbert* was filed in this Court. The original case included approximately 4,500 plaintiffs alleging individual claims against Monsanto.

---

[3] Moreover, an *Anniston Star* article on this study warned the public that the data had been supplied to the EPA by Solutia and a local group: Community Against Pollution. (Defs.' Ex. F. at Doc. 202 - 203.)

[4] The *Balkom* Court entered a Case Management order on September 13, 2002, setting discovery and dispositive motion deadlines on the issue of class certification, but the case was later stayed after the settlement in *Tolbert* was announced.

In mid-August 2001, the issue of PCBs was pervasively publicized in Calhoun County when nationally acclaimed attorney Johnnie Cochran and other lawyers held a "community meeting" in Calhoun County. According to the August 15 edition of *The Birmingham News*:

> Celebrity lawyer Johnnie Cochran traveled to Anniston on Tuesday to help people fight chemical contamination that has crept into their gardens, homes and bloodstreams.
>
> . . . .
>
> The 7,000 capacity Anniston Entertainment Complex was packed and streets were clogged for blocks with those eager to see Cochran and tell him of the sickness they blame on cancer-linked polychlorinated biphenysl or PCBs.

(Defs.' Ex. B. at Doc 488.)

By the end of 2002, over 26,000 individuals had filed lawsuits in this Court and state courts against Monsanto over PCB contamination, including without limitation, the *Tolbert* litigation and *Abernathy v. Monsanto*, in the Circuit Court of Calhoun County, Alabama.

According to the 2000 census, the adult population of Calhoun County is roughly 86,000 persons. Census Bureau, Census 2000, Table DP1: Profile of Demographic Characteristics: 2000, Geographic Area: Calhoun County, Alabama.

At all material times, the Plaintiffs have resided in Calhoun County, Alabama.

II. The Controlling Law

Under Alabama law, the statute of limitations for personal injury claims is two years,[5] while the statute of limitations for property damage is six years.[6]

As a general rule, the Alabama limitations period begins to run on the date when the challenged conduct occurs. *Payton v. Monsanto Co.*, 829 So. 2d 829, 835 (Ala. 2001). However, when the "act complained of does not in and of itself constitute a legal injury on the date on which it was performed, the cause of action . . . [accrues] when the <u>first legal injury occurs</u> . . . ." *Id*. at 835 (emphasis added).

CERCLA imposes a different rule with respect to when the statute of limitations begins to accrue for competent adults who assert claims for "personal injury, or property damages" arising out of exposure to "hazardous substance(s) . . . pollutant(s) or contaminant(s), released into the environment . . . ." 42 U.S.C. § 9658(a)(1). The statute of limitations begins to run on "the date the plaintiff knew (or reasonably should have known) that the personal injury or property damages . . . were caused or contributed to by the hazardous substance or pollutant or contaminant concerned." 42 U.S.C. § 9658(b)(4)(A).

Because this federal accrual limitations period applies in "<u>any action</u> brought

---

[5] Ala. Code § 6-2-38(1).

[6] Ala. Code § 6-2-34. However, Defendants maintain that Plaintiffs' claim for trespass is actually a claim for trespass on- the-case, which has a two year statute of limitations.

under State law for personal injury, or property damage," involving environmental contamination, the CERCLA accrual period is applicable in the instant cases, rather than the Alabama "date of injury" accrual standard. 42 U.S.C. § 9658(a)(1) (emphasis added); *Tucker v. Southern Wood Piedmont Co.*, 28 F.3d 1089, 1091 (11th Cir. 1994) (finding that "there is a federally mandated 'discovery rule' for environmental torts brought under state law . . .").

Pursuant to the CERCLA standard, "(a) plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." *Ball v. Union Carbide, Corp.*, 385 F.3d 713, 721 (6th Cir. 2004) (citation omitted). In other words, "[a] plaintiff is charged with constructive knowledge even when she claims that 'she did not hear or read any of the media reports.'" *Id.* at 722 (citation omitted). Thus, at least one federal Circuit Court of Appeals "has 'looked to what event should have alerted the typical lay person to protect his or her rights.'" *Id.* at 721-22 (citation omitted). "Plaintiffs cannot sit idly by and wait for the defendants to admit their liability or even for the federal government to prove their claims. They must do that themselves." *Carey v. Kerr-McGee Chem. Corp.*, 999 F. Supp. 1109, 1116 (N.D. Ill. 1998) (citation omitted).

The commencement of a statute of limitations is generally a question of fact. *In re Beef Indust. Antitrust Litig.,* 600 F.2d 1148, 1169-70 (5th Cir. 1979). More

specifically, our circuit has "held on numerous occasions that, as a general rule, the issue of when a plaintiff in the exercise of due diligence should have known of the basis of his claims is not an appropriate question for summary judgment." *Morton's Mkt., Inc. v. Gustafson's Dairy, Inc.*, 198 F.3d 823, 832 (11th Cir. 1999) (citing *Smith v. Duff and Phelps, Inc.,* 8891 F.2d 1567, 1572 (11th Cir. 1990); *Durham v. Bus. Mgmt. Assocs.,* 847 F.2d 1505, 1509 (11th Cir. 1988)). Summary judgment is appropriate only if the relevant facts are undisputed; and the Defendants have the burden of

> point[ing] to undisputed facts in the record which demonstrate conclusively that plaintiffs had notice of their claims, and, that, had they exercised reasonable diligence, they would have discovered adequate grounds for filing this ... lawsuit during the limitations period.

*Morton's Mkt.*, 198 F.3d at 832.

Publicity surrounding an event can trigger the running of the statute of limitations. *See Tello v. Dean Witter Reynolds, Inc.,* 410 F.3d 1275, 1292 - 93 (11th Cir. 2005); *La Grasta v. First Union Sec., Inc.,* 358 F.3d 840, 848 (11th Cir. 2004) "[F]or a press article to put [a plaintiff] on notice, there must be some reasonable nexus between the allegations made in the article and the nature of the action subsequently brought." *Tello,* 410 F.3d at 1292, (quoting *Berry v. Valence Tech., Inc.,* 175 F.3d 699, 705 (9th Cir.1999)).

The filing of a class action lawsuit tolls the statute of limitations for all members of the putative class. *American Pipe and Constr. Co. v. Utah,* 414 U.S. 538 (1974). "Once the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied. At that point, class members may choose to file their own suits or intervene as plaintiffs in the pending action." *Crown, Cork & Seal Co., Inc., v. Parker,* 462 U.S. 345, 354 (1983); *see also, First Baptist Church of Citronelle v. Citronelle-Mobile Gathering, Inc.*, 409 So. 2d 727, 729 (Ala. 1981); *White v. Sims*, 470 So. 2d 1191 (Ala. 1985); *Burdeshaw v. White*, 585 So. 2d 842 (Ala. 1991). "Knowledge and reliance by unnamed class members has never been relevant in determining whether the statute of limitations is tolled during the pendency of a class action." *Sims*, 479 So. 2d at 1193.

## III. Analysis

Defendants argue that Plaintiffs knew or should have known that their injury or property damage was caused by exposure to PCBs prior to November 14, 2001: six years prior to the commencement of the present actions.

Based on the undisputed facts, the Court concludes that by August 2001, the Plaintiffs knew or reasonably should have known of their claims against Monsanto. Not only had the local news media alerted the citizenry to the issue of Monsanto

PCBs, but numerous well publicized lawsuits had been filed against Monsanto and, in August 2001, Johnny Cochran came to town and held what was probably the largest community meeting in the history of Calhoun County on that very issue! Given such publicity, all adult residents of Calhoun County, knew or should have known of their possible causes of action against Monsanto. Any jury finding to the contrary would be unreasonable.

Clearly Plaintiffs had constructive knowledge of their claims against the Monsanto Defendants more than two years before they commenced these actions. But, it is equally clear that this undisputed fact is not fatal to the maintenance of these actions. The Plaintiffs are saved by the pendency of *Balkom v. Monsanto*.

Indubitably, the filing of *Balkom v. Monsanto* in state court on February 25, 2000, tolled the statute of limitations for the Plaintiffs. The *Balkom* plaintiffs asserted claims against Monsanto similar to those alleged in the instant cases. The dismissal of that case on June 23, 2004, effectively denied class certification. Since the Plaintiffs had already commenced these actions by that time, the applicable statute had not begun to run.

For this solitary but controlling reason, the Defendants' Motion for Partial

Summary Judgment will be denied by separate order.

Done this 29th day of September, 2006.

_____
U.W. Clemon
Chief United States District Judge